**Guadalupe JIMENEZ et al., Plaintiffs-Appellants,**

v.

**HIDALGO COUNTY WATER IMPROVEMENT DISTRICT NO. 2 et al., Defendants-Appellees.**

No. 73-3557.

United States Court of Appeals, Fifth Circuit.

June 17, 1974.

David G. Hall, American Civil Liberties Union Foundation-South Tex. Project, San Juan, Tex., Melvin L. Wulf, Burt Neuborne, American Civil Liberties Union, New York City, for plaintiffs-appellants.

Vilma S. Martinez, Sanford Jay Rosen, San Francisco, Cal., George J. Korbel, San Antonio, Tex., amicus curiae.

Harry Hall, Morris Atlas, McAllen, Tex., Garland F. Smith, Weslaco, Tex., for defendants-appellees.

Before TUTTLE, COLEMAN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Plaintiffs filed this complaint for declaratory and injunctive relief on their own behalf and on behalf of a class of persons similarly situated "composed of all those persons whose lands were excluded from the Defendant Water Districts without actual personal notice to the owners or persons in possession of such lands . . . who do not want their lands excluded from the Defendant Water Districts." They specifically assert the unconstitutionality of article 8280-3.2, Vernon's Tex.Ann.Civ.St., under which the action of the defendant water districts occurred and pursuant to which construc-

tive public notice of a meeting of the district for the purpose of excluding certain lands from the district was made by publication and posting, and not by personal notice to the members of the class.[1]

1. Vernon's Ann.Tex.Civ.St. article 8280–3.2 reads in full as follows:

Section 1. As used in this Act:

(a) "Urban property" means land which has been subdivided into town lots, or town lots and blocks, or small parcels of the same general nature of town lots, or town blocks and lots, designed, intended or suitable for residential or other nonagricultural purposes, as distinguished from farm acreage, including streets, alleys, parkways, parks and railroad property and rights-of-way in such subdivision; whether such subdivision be within or near any established city, town or village, or not; and whether or not a plat or map of such subdivision has been duly filed for record and recorded in the office of the county clerk of the county in which such subdivision or any part thereof is situated. Urban property shall not be deemed to include land, which is or has been within one year previous to the date of the hearing hereinafter provided, used for farming or agricultural purposes.

(b) "District" means any water control and improvement district now existing or hereafter created for the principal purpose of, or principally engaged in, furnishing water for the irrigation of agricultural lands and having no outstanding bonded indebtedness owing by such water control and improvement district at the time of the hearing hereinafter provided, or having indebtedness only in connection with a loan from an agency of the United States, provided written consent from an authorized representative of the agency of the United States involved to the proposed exclusion hereunder is on file with the district prior to the time of the hearing hereinafter provided.

Sec. 2. Urban property located within the boundaries of a district may be excluded from such district by the Board of Directors after a hearing by the Board of Directors called and held as hereinafter set forth.

Sec. 3. The Board of Directors of a district may by majority vote adopt a resolution calling a hearing to determine whether or not all or any part or parts of any urban property shall be excluded from the district. The resolution adopted by the Board of Directors shall describe the urban property proposed for exclusion by metes and bounds, by lots, blocks and subdivision or by other legal description so as to definitely identify the same, and such resolution shall set forth the purpose of the hearing as well as the date, time and place at which such hearing shall be had.

Sec. 4. It shall be the duty of the Board of Directors to cause notice of such hearing to be given by posting a true copy of the resolution referred to in the preceding section at the courthouse door of the county in which such district or any portion thereof is situated, at a location in or near the urban property proposed for exclusion, and also in a conspicuous place in the principal office of the district for at least three (3) weeks before the date of such hearing. The date, time, place and purpose of such hearing shall also be advertised by publishing notice thereof one time in one or more newspapers giving general circulation in the district, such publication to be at least ten (10) days prior to the date of hearing. In the event railroad right-of-way is involved herein, notice shall be given to the railroad company by mailing, first class, a true copy of the same, properly addressed to the offices of the railroad at the address as it appears on the last approved county tax roll.

Sec. 5. If, as a result of such hearing, which may be continued from day to day, and from time to time until all persons entitled to be heard and who appear at said hearing have had an opportunity to be so heard and offer evidence, the said Board of Directors shall determine and find (a) that the owners of a majority in acreage of such urban property do not desire irrigation of the same; or

(b) that such urban property is not used or intended to be used for agricultural purposes; and

(c) that it would be to the best interest of said district and of the urban property proposed to be excluded or any part or parts thereof, that it be excluded from the district, said Board of Directors shall adopt a resolution setting forth such determination and findings and excluding the urban property or such part or parts thereof as to which such determination and findings are made. Should any canals, ditches, pipelines, pumps or other facilities of the district be located upon lands excluded in the resolution of the Board of Directors, such exclusion shall not affect nor interfere with any rights which the district might have to maintain and continue operation of the facilities as located for the purpose of servicing lands remaining in the district. A copy of said resolution excluding urban property from

On October 28, 1971, the board of directors of defendant Hidalgo County Water District No. 2 ordered the exclusion of 36 rural subdivisions in which plaintiffs and their class reside. On September 6, 1972, the board of directors of defendant Hidalgo and Cameron Counties Water Control and Improvement District No. 9 excluded 40 of such subdivisions. These are very large water districts situated in the most populous regions of the Lower Rio Grande Valley at the southernmost tip of Texas.

Plaintiffs complain that they have been deprived of their right to vote for members of the board of directors of the defendant water districts by the districts' action in excluding the areas is which they live from the territorial limits of the defendant water districts. Under Vernon's Ann.St. Texas Constitution, article 6, § 2, a person must reside in the district in which he intends to vote. Plaintiffs desire to assert the right to vote for directors so that eventually they may be able, through directors elected by them, to change the policy of the defendant water district from one primarily devoted to irrigation for agriculture to one also engaged in providing domestic water and sanitation services for the poor unincorporated rural areas (colonias) in which they and their class reside. Thus exclusion of the territory in which they live by action of defendant boards, pursuant to the constructive notice provisions of article 8280–3.2, is, they assert, an unconstitutional deprivation of their right to vote, contrary to the Fourteenth Amendment and the due process clause thereof.

Plaintiffs contend that the constructive notice contemplated by article 8280–3.2 fails to comply with procedural standards required by the due process clause when political subdivisions of a state, such as the water districts here, exclude a substantial number of the residents of those districts thereby terminating their political rights within the subdivision, including any rights to receive services from these political units. They cite decisions of the Supreme Court on the issue of the sufficiency of notice under the due process clause, such as the leading case of Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); also Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), and others. They contend that a real opportunity to be heard must be offered by a water district which proposes to de-annex the property of numerous citizens from the limits of the district. They aver that since 1920, in the case of San Juan District (Water District No. 2), and since 1928, in the case of Mercedes District (Water District No. 9), the plaintiffs and their class have been vested with the right to vote and participate in the political affairs of both districts and that these rights have now been divested by the defendant water districts with only the constructive notice to affected citizens by publication and posting.

Plaintiffs assert that none of the plaintiffs or their class received any actual notice of the hearings which were to consider exclusion of their communities from the districts; that the pre-

the district certified to and acknowledged by the Secretary of the Board of Directors shall be recorded by the district in the Deed Records in the county in which the excluded property is situated as evidence of such exclusion.

Sec. 6. From and after the adoption of a resolution by the Board of Directors excluding urban property the excluded property shall constitute no part of such district and shall have no further liability thereafter to said district for taxes, assessments or other charges of the district, but any taxes, assessments or other charges owing to the district at the time of exclusion shall remain the obligation of the landowner and shall continue to be secured by any and all statutory liens, if any.
Acts 1971, 62nd Leg., p. 814, ch. 86, eff. Aug. 30, 1971.

dominant language of most of the residents of the colonias is Spanish and many do not read, write or understand the English language; that the names and addresses of the persons affected by the exclusion were readily available in the public records of the Hidalgo County Tax Assessor-Collector and it would have been possible to have copied these names and addresses from the tax records so that actual notice could have been given. Plaintiffs contend, therefore, that insufficiency of notice has deprived them of their right to a hearing.

On the other hand, the defendant water districts contend that the type of notice complained of in this case is universally provided in similar proceedings in practically every state in the Union and that it would be a practical impossibility to give the kind of notice which plaintiffs contend is minimally required by the due process clause. They point out that similar notice provisions have been upheld by the Texas Supreme Court in Tarrant County Water Control & Improvement District No. 1 v. Pollard, Attorney General, 118 Tex. 138, 12 S.W.2d 137 (1929); Rutledge v. State, 117 Tex. 342, 7 S.W.2d 1071 (1928) and Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070 (1927). Defendants also contend that the cases cited by plaintiffs, such as *Mullane* and *Schroeder, supra,* are not authority for the proposition that in this type of exclusion proceedings on property from the boundaries of a water control district, personal notice by mail is required nor is the type of notice one required in judicial proceedings.

Defendants cite the leading case of Hunter v. Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907), to the effact that the territory over which political subdivisions of the state shall exercise authority rests in the absolute discretion of the state. This is true, defendants argue, unless there is clear encroachment upon the provisions of the Fourteenth Amendment. Thus they conclude that the determination of what property should originally be included in water control and improvement districts or subsequently excluded was a political right clearly reserved to the State of Texas by the provisions of the Tenth Amendment. *See* Johnson v. Hood, 5 Cir., 1970, 430 F.2d 610.

Defendants conclude that there is no substantial constitutional question presented as to require convening of a three-judge court and accordingly that the district court was correct in so holding and in dismissing plaintiffs' suit.

This case is a companion case to Juan Fonseca et al. v. Hidalgo County Water Improvement District No. 2 et al., decided this day, 496 F.2d 109, where we held that another constitutional attack on a Texas statute was not insubstantial under the tests correlated by the Supreme Court in the recent decision in Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L. Ed.2d 36. *See also* our recent decision in Sands v. Wainwright, 5 Cir., 1973, 491 F.2d 417. We are likewise unable to say here that the constitutional attack of plaintiffs is "essentially fictitious," "wholly insubstantial," "obviously frivolous," "obviously without merit," or that "its unsoundness so clearly results from the previous decisions of this [the Supreme] court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy."

It is necessary, therefore, that this case be remanded to the district court for the organization of a three-judge court, as required by 28 U.S.C. § 2281.

Reversed and remanded.