ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

January 25, 2010

The Honorable Mark Homer
Chair, Committee on Culture, Recreation
    and Tourism
Texas House of Representatives
Post Office Box 2910
Austin, Texas   78768-2910

Opinion No.  GA-0756

Re:  Qualifications for service on the Board of
Directors of the Logan Slough Creek Improvement
District;  elections  to  the  District's  Board;  and
applicability of the Open Meetings Act and Public
Information Act to the District   (RQ-0814-GA)

Dear Representative Homer:

You write on behalf of landowners of the Logan Slough Creek Improvement District (the
"District") seeking an opinion on several questions regarding the governance of the District.[1]   The
District is a water district established by special legislation in 1961 under the authority of article
XVI, section 59, Texas Constitution.[2]   The District is governed by its special legislation.  *See Bexar
Metro. Water Dist. v. City of San Antonio*, 228 S.W.3d 887, 890 (Tex. App.—Austin 2007, no pet.)
("Texas water districts . . . have the authority to exercise any powers within 'the terms of the statutes
which authorized their creation . . . .'" (citation omitted)).  Moreover, as a district created under
Texas Constitution, article XVI, section 59, the District is also subject to certain provisions of the
Water Code, including chapter 49.  *See* TEX. WATER CODE ANN. §§ 49.001(a)(1) (Vernon 2008)
(defining "district" to include districts created by authority of section 59, article XVI, Texas
Constitution), 49.002(a) ("[T]his chapter applies to all general and special law districts to the extent
that the provisions of this chapter do not directly conflict with a provision in any other chapter of this
code or any Act creating or affecting a special law district.").

The District's purpose includes the controlling of floods for the preservation of land and soil
and the fertility thereof, the construction and operation of dams and other structures for flood

---

[1]*See* Request Letter (*available at* http://www.texasattorneygeneral.gov); *see also* Brief attached to Request
Letter (on file with the Opinion Committee) [hereinafter Brief].

[2]*See* Act of May 4, 1961, 57th Leg., R.S., ch. 179, 1961 Tex. Gen. Laws 333, 333–41 [hereinafter "1961 Act"].
The 1961 Act was amended in 1963.  *See* Act of May 9, 1963, 58th Leg., R.S., ch. 215, 1963 Tex. Gen. Laws 592,
592–94 (replacing section 19 of the 1961 Act) [hereinafter "1963 Act"].  In addition, the acts of the District were
subsequently ratified by the Legislature in 1965.  *See* Act of May 27, 1965, 59th Leg., R.S., ch. 541, 1965 Tex. Gen.
Laws 1148, 1148–49 [hereinafter "1965 Act"] [hereinafter, collectively, "District's legislation"].  Because of the nature
and specificity of the District's legislation, this opinion is necessarily limited to the Logan Slough Creek Improvement
District.

prevention and for agricultural phases of conservation, and the development, utilization and disposal of water in the District. *See* 1961 Act, *supra* note 2, § 5, at 336. The 1961 Act declares that all the lands in the boundaries of the District will be benefitted. *See id.* § 20, at 340. Relevant to your particular governance questions, the 1961 Act creates and empowers the District's Board of Directors (the "Board") to act for the District. *See id.* § 3(a), at 335. It names the initial Board members, provides for the staggered election of future Board members, and establishes election procedures for the Board. *See id.* § 3(b)–(c), at 335–36. The 1961 Act also establishes the qualifications for Board members and includes the requirement that to be qualified a person must own "taxable property in the District." *Id.* § 3(a), at 335.

You inquire first about the meaning of "taxable property in the District" as used in the District's legislation. *See* Request Letter at 1; Brief at 5. The District's legislation does not define the phrase "taxable property in the District." *See* District's legislation, *supra* note 2. Nor does any other relevant statute or Texas judicial opinion. We examine the common meaning of the term "taxable." *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). "Taxable" is commonly defined to mean "subject to taxation." BLACKS LAW DICTIONARY 1598 (9th ed. 2009); *see also* XVII OXFORD ENGLISH DICTIONARY 678–79 (2d ed. 1989) (defining "taxable" to mean: "[l]iable to be assessed (*to* a tax, impost, or charge); . . .[or] . . . [o]ne who or that which is subject to taxation; *esp.* in *pl.* persons or things liable to a tax"). Based on the common meaning of the term taxable, the phrase is reasonably construed to mean *property located within the district and subject to taxation.* Further, we believe it follows that the property subject to taxation must be that which is subject to taxation *by the District.* *See* 1961 Act, *supra* note 2, § 10, at 338 (providing that "the District is empowered to issue negotiable bonds payable from ad valorem taxes to be levied on all taxable property within the District. It shall be the duty of the Board . . . to levy a tax sufficient to pay the bonds and interest thereon as such bonds and interest become due."); 1963 Act, *supra* note 2, § 1(a), at 594 (noting District's authority to "levy and collect taxes to secure funds to maintain, repair, and operate all works and facilities"); *see also* TEX. CONST. art. XVI, § 59(c) (authorizing Legislature to provide districts created thereunder with taxing authority and to subject property to lien).

You next inquire whether the District's elections are to be held in accordance with the District's legislation or with the Election Code. *See* Request Letter at 1; Brief at 10–14. Specifically, you ask how a candidate gets his or her name on the ballot, where the election notice is to be published, and whether correct procedures were followed in the conduct of the District's last Board of Directors election. *See* Request Letter at 1; Brief at 10–14. The Election Code applies to general, special, and primary elections in the state. TEX. ELEC. CODE ANN. § 1.002(a) (Vernon 2003); *see also* TEX. WATER CODE ANN. § 49.101 (Vernon 2008) ("All elections shall be generally conducted in accordance with the Election Code except as otherwise provided for by this code."). Further, the Election Code "supersedes a conflicting statute outside [the Election] code unless [the Election] code or the outside statute expressly provides otherwise." TEX. ELEC. CODE ANN. § 1.002(b) (Vernon 2003). We specifically examine here only those provisions regarding an applicant who is seeking a place on the ballot and publication of election notice.

With respect to a candidate for the District's Board seeking to have his or her name on the ballot, the District's legislation provides that the person must present a petition with the request to the Secretary of the Board. *See* 1961 Act, *supra* note 2, § 3(d), at 336. The petition must be signed by not less than three resident, qualified voters, and it must be presented on a date that will allow "not less than ten (10) full days between the date of presentation and the date of the election." *Id.* The Election Code also contains requirements for a petition that relates to a place on the ballot. *See* TEX. ELEC. CODE ANN. § 141.061 (Vernon 2003) (providing that subchapter C, chapter 141, Election Code, "applies to each petition filed in connection with a candidate's application for a place on the ballot"). The Election Code petition requirement does not impose a specific deadline by which a person must file the petition and requires only that the petition be "timely filed with the appropriate authority"). *Id.* § 141.062(a)(1). With no conflicting or inconsistent petition provision in the Election Code, the provision in the District's legislation would control such that a person seeking to have his or her name included on the District's ballot must file a petition.

The Election Code's requirements with respect to the petition indicate that the petition referenced in section 141.061 is one "filed in connection with a candidate's application for a place on the ballot." *Id.* § 141.061. Election Code subsection 144.003(a) provides that "[e]xcept as otherwise provided by law" candidates for an office of a political subdivision other than a county or city "must make an application for a place on the ballot." *Id.* § 144.003(a) (Vernon Supp. 2009); *see also id.* § 144.001 (Vernon 2003) (providing that chapter 144 "applies to a candidate for an office of a political subdivision other than a city or county"). Generally, an application for a place on the ballot must be filed "not later than 5 p.m. of the 62nd day before election day." *Id.* § 144.005 (Vernon Supp. 2009). There is no provision in the District's legislation requiring an application for a place on the ballot. *See* District's legislation, *supra* note 2. Moreover, the District's legislation does not expressly provide that its election provisions control over conflicting election laws, nor does it generally provide that its provisions prevail over any other general law.[3] *See id.*; *cf.* Act of May 24, 1989, 71st Leg., R.S., ch. 654, §§ 1, 6, 1989 Tex. Gen. Laws 2155, 2156 (creating the Springhills Water Management District and providing that its provisions "prevail[] over any provision of general law that is in conflict or inconsistent"). Accordingly, a person seeking to have his or her name included on the District's ballot must file an application for a place on the ballot in accordance with chapter 144 of the Election Code.

Under the District's legislation, notice of an election for directors "shall be published in a newspaper of general circulation in said District one (1) time at least 30 days before the election." *See* 1961 Act, *supra* note 2, § 3(c), at 335. Section 4.003, Election Code, authorizes several different methods of publishing a notice of an election. *See* TEX. ELEC. CODE ANN. § 4.003(a)(1)–(3) (Vernon

---

[3]Information included with your request cites to a provision in the District's legislation providing that the legislation controls over the Election Code. *See* Brief at 12 (citing section 11 of the 1961 Act). The referenced section provides that: "The General Laws relating to elections shall be applicable to elections held under this section of the law, except as otherwise provided in this law." 1961 Act, *supra* note 2, § 11, at 338. "[T]his section" of the District's legislation pertains to elections for the District's issuance of bonds. *See id.* Its express limitation to "elections held under this section of the law" limits the proposition to the District's bond elections. *Id.* It does not govern elections for directors to the District's Board.

2003). However, subsection 4.003(d) provides, with an exception not relevant here, that "[i]f other law prescribes the method of giving notice of an election, that law supersedes this section . . . ." *Id.* § 4.003(d). By the express terms of Election Code subsection 4.003(d), the District's election notice publication provision—as other law prescribing a method of giving notice—prevails. Accordingly, we believe the District must publish election notices pertaining to its director elections as required by the District's legislation.

You ask whether correct procedures were followed in regard to the last election for the District's Board of Directors. Request Letter at 1; Brief at 10–14. The brief attached to your Request Letter informs us of particular procedures believed to be improper but does not supply an election order, ballot, canvass order, or like evidence that conclusively establishes as improper the procedures questioned. *See generally* Request Letter and Brief. Moreover, to conclude absolutely that improper procedures were used requires a determination of facts, which is inappropriate to the Attorney General opinion process. *See* Tex. Att'y Gen. Op. No. GA-0485 (2006) at 4 (noting that questions involving issues of fact are outside the Attorney General opinion process). Finally, we note that the appropriate method for raising irregularities in the conduct of an election is a timely filed election contest brought in district court.[4] *See* TEX. ELEC. CODE ANN. §§ 221.002(a), .003(a) (Vernon 2003). We therefore cannot address this question.

In a related question that is based on an assumption that there are unqualified directors on the District's Board and that improper election procedures were followed, you next ask "how does the District proceed to have a legal election for qualified directors?" Request Letter at 1; Brief at 14. With respect to future elections of the District, we can advise you generally that they should be conducted in accordance with relevant provisions from the District's legislation, applicable provisions of the Water Code, the Election Code, and other applicable law such as the Federal Voting Rights Act and the state and federal constitutions.[5] *See generally* 42 U.S.C.A. § 1973 (West 2003) (Voting Rights Act); U.S. CONST.; TEX. CONST.

Finally, you inquire whether the District is subject to the Open Meetings Act and the Public Information Act. Request Letter at 1; Brief at 14–16. By the express terms of sections 49.063 and 49.065, Water Code, the District is subject to the two acts. *See* TEX. WATER CODE ANN. §§ 49.063 (Vernon 2008) (applicability of Texas Open Meetings Act), 49.065 (applicability of Texas Public Information Act); *see also* TEX. GOV'T CODE ANN. §§ 551.002 (Vernon 2004) ("Every regular, special, or called meeting of a governmental body shall be open to the public, except as provided by

---

[4]Generally, "irregularities in the conduct of an election which cannot be shown to have materially affected the results of the election are immaterial." *Day v. Crutchfield*, 400 S.W.2d 377, 381 (Tex. Civ. App.—Texarkana 1965, writ dism'd); *see also Des Champ v. Featherston*, 886 S.W.2d 536, 539 (Tex. App.—Austin 1994, no writ) (discussing standard to set aside an election). Whether any improper procedures are mere irregularities or were such to have misled or prevented the voters from the fair and free exercise of their vote is a question for the district court. *See Day*, 400 S.W.2d at 380.

[5]*See Fonseca v. Hidalgo County Water Improvement Dist.*, 496 F.2d 109, 111–12 (5th Cir. 1974) (considering constitutionality of section 51.072, Water Code); Tex. Att'y Gen. Op. No. DM-484 (1998) at 4–10 (considering constitutionality of section 53.063, Water Code).

this chapter."), 551.001(3)(H) (Vernon Supp. 2009) (defining "governmental body" to include the "governing board of a special district created by law"), 552.021 (Vernon 2004) (making public information available to the public), 552.002(a)(1) (defining "public information" to mean "information that is collected, assembled, or maintained . . . by a governmental body"), 552.003(1)(viii) (defining "governmental body" to include the "governing board of a special district"). Any question as to whether the District has violated provisions of these two acts in particular instances involves factual considerations that are inappropriate to the Attorney General opinion process. *See* Tex. Att'y Gen. Op. No. GA-0485 (2006) at 4 (noting that questions involving issues of fact are outside the Attorney General opinion process).

### S U M M A R Y

Under the Logan Slough Creek Improvement District's special legislation, to be qualified to serve on the District's Board of Directors a person must own real property located within the District that is subject to taxation by the District.

The District's elections must be conducted in accordance with applicable provisions of the District's legislation, the Water Code, the Election Code and other applicable law such as the Federal Voting Rights Act and the state and federal constitutions.

The District is subject to the Texas Open Meetings Act and the Texas Public Information Act.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee